UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS  DIVISION

OCWEN LOAN SERVICING, LLC, )
    Plaintiff, )
       )
  vs.   )   1:07-cv-01449-SEB-DML
       )
NATIONWIDE MUTUAL FIRE  )
INSURANCE COMPANY and  )
AMERICAN FAMILY MUTUAL  )
INSURANCE COMPANY,   )
    Defendants. )

**ORDER ON PENDING MOTIONS**

This cause is before the Court on cross-motions for summary judgment.  On May 31, 2011, Defendant, American Family Mutual Insurance Company ("American Family"), filed a Motion for Summary Judgment [Docket No. 81] seeking judgment as a matter of law as to all causes of action asserted against it by Plaintiff, Ocwen Loan Servicing, LLC ("Ocwen"), in its Complaint [Docket No. 1].  Also on May 31, 2011, Plaintiff filed its Motion for Summary Judgment [Docket No. 86] seeking judgment as a matter of law as to its breach of contract and bad faith claims against American Family and its breach of contract claim against Defendant, Nationwide Mutual Fire Insurance Company ("Nationwide").  For the reasons detailed in this entry, the Court:  (1) DENIES American Family's Motion for Summary Judgment on Ocwen's breach of contract claim against American Family and GRANTS American Family's Motion for Summary Judgment on Ocwen's quasi-contract and bad faith claims against American Family; (2) GRANTS Ocwen's Motion for Summary Judgment on its breach of contract claim

against American Family and DENIES Ocwen's Motion for Summary Judgment on its bad faith claim against American Family; and (3) DENIES Ocwen's Motion for Summary Judgment against Nationwide.

## Factual Background

Keith and Shonda Allen ("the Allens") own real property located at 422 South Talley Avenue in Muncie, Indiana. Compl. ¶¶ 6-7. In May of 1999, the Allens executed a note and mortgage secured by this property with National City Bank.[1] Compl. Ex. 1 at 1. HSBC Bank USA, N.A. purchased the note and mortgage from National City Bank in November of 2004, and service of the entire loan was contemporaneously transferred to Ocwen.[2] Pl.'s Br. Ex. 3B at 1; Pl.'s Br. Ex. 6 at 1. In executing the mortgage, the Allens agreed "to procure and maintain in effect at all times hazard (fire and extended coverage) insurance in an amount which is at least equal to the total amount of indebtedness secured hereby or the replacement value of the Mortgaged Premises . . . ." Compl. Ex. 1 at 1.

On July 19, 2005, the Allens took out a homeowners' insurance policy with Nationwide, an Ohio corporation with its principal place of business in Ohio. Compl. ¶¶ 3, 9. Policy number 91 13 HP 164976 ("the Nationwide Policy") covered the Allens' Talley Avenue residence up to a liability limit of $234,000 and had a period of effectiveness running between July 15, 2005 and July 15, 2006. Compl. Ex. 2 at 1. The

---

[1]National City Bank is currently doing business as PNC.

[2]Ocwen is a Florida limited liability company with its principal place of business in Florida. Its only member is Ocwen Financial Corporation, a Florida corporation with its principal place of business in Florida. Compl. ¶¶ 1, 2.

Nationwide Policy listed the Allens as "named insureds" and Ocwen as "first mortgagee." *Id.* at 1-2. It covered "accidental direct physical loss to property described" except for certain exclusions—including, but not limited to, "[i]ntentional acts, meaning loss resulting from an act committed by or at the direction of an insured." *Id.* at 10, 12. The term "intentional acts" excluded coverage for "all insureds." *Id.* at 12.

The Nationwide Policy also contained a standard mortgage clause which provided, in pertinent part, as follows:

> If a mortgagee is named in this policy, a loss payable . . . will be paid to the mortgagee and you,[3] as interests appear. . . . If we deny your claim, that denial will not apply to a valid claim of the mortgagee, if the mortgagee:
>> a) notifies us of change in ownership, occupancy, or substantial change in risk of which the mortgagee is aware;
>> b) pays premium due under this policy on our demand, if you neglected to pay the premium;
>> c) submits a signed, sworn proof of loss within 60 days after receiving notice from us of your failure to do so. Policy conditions related to Your Duties After Loss, Loss Payment, Appraisal, and Suit Against Us apply to the mortgagee.

Compl. Ex. 2 at E3. Nationwide was obligated to notify the mortgagee at least ten days before canceling the policy. Further, this provision stated that "[s]ubrogation will not impair the right of the mortgagee to recover the full amount of [its] claim." *Id.*

The Allens also applied for a homeowners' insurance policy with American Family Mutual Insurance Company ("American Family"), a Wisconsin corporation with

---

[3]With respect to the insurance policies discussed in this entry, the terms "you" and "your" refer to the named insureds; similarly, the terms "we," "our," and "us" refer to the respective insurer.

its principal place of business in Wisconsin. Compl. ¶¶ 4, 10. They signed the

application for policy number 13-BG1873-01-PHGS-IN ("the American Family Policy")

on October 14, 2005. Am. Fam.'s Br. Ex. A at 2. Like the Nationwide Policy issued

before it, the American Family Policy insured the Allens' Talley Avenue residence up to

a liability limit of $234,000, and its period of effectiveness was a year (from October 14,

2005 to October 14, 2006). *Id.*; Pl.'s Br. at 4. On its declarations page, the American

Family Policy also identified both of the Allens as "named insureds" and Ocwen as

"mortgagee." Pl.'s Br. Ex. 3 at 21.

The American Family Policy also contained a mortgage clause that was

substantially similar to the one set forth in the Nationwide Policy, the terms of which are

as follows:

> If a mortgagee is named in this policy, any loss payable on buildings will be paid
> to the mortgagee and you, as interests appear. . . . If we deny your claim, that
> denial will not apply to a valid claim of the mortgagee, if the mortgagee:
>> a) notifies us of any change in ownership, occupancy or substantial change
>> in risk of which the mortgagee is aware;
>> b) pays any premium due under this policy on demand if you have
>> neglected to pay the premium; and
>> c) submits a signed, sworn statement of loss within 60 days after receiving
>> notice from us of your failure to do so.

Am. Fam.'s Br. Ex. J at 9. Several other provisions in the American Family Policy were

routine inclusions and are not in apparent dispute in this lawsuit.[4]

---

[4]For instance, intentional loss, "meaning any loss or damage arising out of any act
committed: by or at the direction of any insured; and with the intent to cause a loss," was listed
in the American Family Policy as an exclusion. Am. Fam.'s Br. Ex. J at 7.

Agent Rick Spangler spoke with the Allens by telephone in October 2005 to facilitate submission of their application for the American Family Policy. Am. Fam.'s Br. Ex. H ¶¶ 3, 8. At that time, neither of the Allens advised Mr. Spangler of any prior property losses they had experienced or insurance claims that had been submitted. *Id.* ¶¶ 9-10. On the application itself, the Allens indicated "no" in response to the question of whether they had any past or current losses at any locations. Am. Fam.'s Br. Ex. A at 1. In signing the application, they expressly represented as follows: "These statements are accurate to the best of my knowledge. [American Family] may rely upon them in issuance of this policy." *Id.* at 2. One of the "general conditions" of the American Family Policy provides that "[the] entire policy is void if, before or after a loss, any insured has: intentionally concealed or misrepresented any material fact or circumstance; engaged in fraudulent conduct; or made false statements relating to this insurance." Am. Fam.'s Br. Ex. J at 13.

American Family's designated evidence of record reveals discrepancies between the Allens' statements in the American Family application and their subsequent admissions of fact. Specifically, in a recorded statement taken on or about November 16, 2005, Mr. Allen admitted the following prior property losses: two fires affecting rental property in 1993 and 1996; two automobile fires in the 1990s; a jewelry loss in 2001; and four house fires at the Talley Avenue residence in 1989, 1990, 2000, and 2003. Am. Fam.'s Br. ¶ 16; Am. Fam.'s Br. Exs. B, C, G. Lucreia Smith, an underwriter for American Family, characterized the discrepancies between Mr. Allen's remarks and the

Allens' application answers as "misrepresentations," reporting as follows with respect to the property losses:

> Had American Family . . . known of the misrepresentations . . . and the true facts of [the Allens'] prior fire losses and claims, the policy would not have been issued or a higher premium would have been charged. The fact that the Allens had suffered numerous fires to real property would have resulted in a rejection of the application for any coverage with American Family . . . and the policy of insurance would never have been written or issued pursuant to the underwriting guidelines. American Family . . . relied upon the misrepresentations contained in the application . . . to its detriment in issuing the policy.

Am. Fam.'s Br. Ex. I ¶¶ 12-13. Similarly, the second page of the American Family Policy warns policyholders that "we [, American Family,] may void this policy if the statements you [, the insured,] have given us are false and we have relied on them." Am. Fam.'s Br. Ex. J at 2.

American Family became aware of the Allens' misrepresentations just two days after November 14, 2005, the day the Allens submitted an insurance claim reporting a November 12, 2005 total fire loss to the Talley Avenue residence. Am. Fam.'s Br. Ex. G ¶ 14; Pl.'s Br. at 6. On November 17, 2005, American Family sent the Allens a reservation of rights letter. Am. Fam.'s Br. Ex. G ¶ 14. Then, on November 29, 2005, American Family sent Mr. Allen a letter "void[ing] the policy *ab initio* . . . [and] return[ing] the entire premium payment." *Id.* at 14-15.

Meanwhile, the Allens also sought reimbursement from Nationwide. They submitted a claim to Nationwide on November 21, 2005 for damages arising from the November 12, 2005 fire loss. Pl.'s Br. at 6. Nationwide denied the Allens' claim in a

letter dated June 12, 2006.  In the letter, the claims representative stated, "Our investigation found that this loss was the result of an intentional act," and that Nationwide would not provide coverage or indemnifications to the Allens for the loss.  *Id.*; Compl. Ex. 3 at 1.

On September 8, 2006, the Allens filed a lawsuit against Nationwide, American Family, Richard Spangler d/b/a Rick Spangler Agency, and Ocwen in the Delaware County Circuit Court.  Ocwen's Amended Answer contained a cross-claim against Nationwide and American Family asserting three counts against Nationwide (breach of contract, promissory estoppel, and unjust enrichment) and three counts against American Family (breach of contract, quasi-contract, and bad faith).  The essence of Ocwen's cross-claim was that both Nationwide and American Family had wrongfully refused to pay insurance proceeds to which Ocwen believed it was entitled as mortgagee under the Allens' homeowners' insurance policies.  American Family subsequently moved for summary judgment, and the state court granted this motion, entering final judgement in favor of American Family and against the Allens.[5]  In its ruling, the Delaware County Circuit Court held that:  (1) the American Family Policy was void as to the Allens based on the Allens' material misrepresentations in their insurance application; (2) American Family was not liable to the Allens for any damages stemming from the November 12,

---

[5]The Delaware County Circuit Court's decision is not *res judicata* because the parties and issues are not identical to those present in the instant litigation and therefore do not constitute the same nucleus of operative facts.  *See Alvear-Velez v. Mukasey*, 540 F.3d 672, 677 (7th Cir. 2008).

2005 Talley Avenue fire loss; and (3) American Family was entitled to a final judgment

as a matter of law on all of the Allens' claims in that lawsuit. Am. Fam.'s Br. Ex. L at 2.

In the same case, Ocwen filed a Motion for Summary Judgment on its cross-claim against

both Nationwide and American Family on November 4, 2009, and the court denied

Ocwen's motion on June 16, 2010.

For Mr. Allen, waging the state court battle has arguably been one of his lesser

worries. On November 15, 2007, a federal grand jury returned a true bill of indictment

charging him as a member of a conspiracy to violate 18 U.S.C. § 844(h) by using fire to

commit mail fraud. Am. Fam.'s Br. Ex. E at 1. The United States submitted a "Factual

Basis for Kenneth Allen Plea," which provided that the November 12, 2005 fire "was not

accidental. . . . Further investigation discovered evidence that implicated Allen in arson-

for-profit in the fire at his . . . house, and also other fires." *Id.* at 4. The Court[6] accepted

Mr. Allen's guilty plea on April 9, 2008 and sentenced him to forty-eight (48) months in

prison. *Id.* at 7-8.

Ocwen filed the instant action in this court on November 9, 2007. Its Complaint

contained the same counts as the cross-claim in state court: (1) breach of contract,

promissory estoppel, and unjust enrichment against Nationwide, and (2) breach of

contract, quasi-contract, and bad faith against American Family. As it did in the state

court cross-claim, Ocwen asserts that the Allens' homeowners' insurance policies entitle

---

[6]The criminal proceeding against Mr. Allen, No. 1:07-cr-0153-SEB-KPF, took place
before this court.

it to the payment of insurance proceeds. Ocwen seeks damages in the amount of the

Allen's total principal debt on November 12, 2005 ($79,390.08) with interest and fees

incurred to the date of judgment. Additionally, Ocwen requests punitive damages in the

amount of $392,936.73 and a declaration that the American Family Policy is "valid,

applicable, and enforceable." Compl. ¶ 56A; Pl.'s Br. at 18.

## Legal Analysis

### I. Standard of Review

Because the interpretation of written contracts such as insurance policies is

typically a matter of law, disputes arising under the terms of such agreement are

particularly appropriate for resolution by summary judgment. *See Hurst-Rosche Eng'rs,*

*Inc. v. Commercial Union Ins. Co.*, 51 F.3d 1336, 1342 (7th Cir. 1995). Summary

judgment is warranted when the record demonstrates that there is "no genuine issue as to

any material fact and that the moving party is entitled to a judgment as a matter of law."

Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). In deciding

whether genuine issues of material fact exist, the court construes all facts in a light most

favorable to the non-moving party and draws all reasonable inferences in favor of the

same. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

Courts are often confronted with cross-motions for summary judgment because

Rules 56(a) and (b) of the Federal Rules of Civil Procedure allow plaintiffs and

defendants to move for such relief. In these circumstances, courts must consider the

motion of each party individually to determine if the party has satisfied the Rule 56

standard. *Am. Gen. Life Ins. Co. v. Tomlinson Ins. Trust*, No. 1:08-cv-1747-SEB-TAB,

2010 WL 3893673, at *3 (S.D. Ind. Sept. 30, 2010) (citing *Kohl v. Ass'n of Trial Lawyers*

*of Am.*, 183 F.R.D. 475, 478 (D. Md. 1998)). Thus, our review of the record before us

requires us to draw all inferences in favor of the party against whom a particular issue in

the motion under consideration is asserted. *Int'l Bhd. of Elec. Workers, Local 176 v.*

*Balmoral Racing Club*, 293 F.3d 402, 404 (7th Cir. 2002); *Hendricks-Robinson v. Excel*

*Corp.*, 154 F.3d 685, 692 (7th Cir. 1998).

## II. Claims Between American Family and Ocwen

### A. Breach of Contract

In Count Four of its Complaint, Ocwen alleges that American Family's duty to

tender insurance proceeds under the Allens' policy was triggered by the Allens' timely

payment of insurance premiums. Ocwen also states that the American Family Policy's

mortgage clause created an independent contract between Ocwen and American Family,

which "presumably created a contractual duty for American Family to pay the proceeds of

the policy to Ocwen in the event of a loss."[7] Compl. ¶¶ 47, 50-51. In response, American

Family argues that there can be no breach of contract claim without the existence of a

valid contract. American Family contends that its decision to void the policy *ab initio* on

November 29, 2005 completely nullified the contract and now precludes Ocwen from

using it as the basis of its breach of contract claim. Ocwen counters in its Motion for

---

[7]Alternatively, Ocwen claims that it is a third-party beneficiary to whom American
Family has breached its duty to pay insurance proceeds. Compl. ¶ 52; Pl.'s Br. at 8.

Summary Judgment that the American Family Policy "only allows cancellation of the insured's contract—not the mortgagee's separate and distinct policy."  Pl.'s Br. at 8.

Under Indiana law, the interpretation of an insurance policy is a matter of law, and insurance policies are subject to the same rules of construction as any other contracts. *Westfield Cos. v. Knapp*, 804 N.E.2d 1270, 1273-74 (Ind. Ct. App. 2004).  Both the insurer and the insured—the contracting parties—have distinct expectations regarding the policy:  the insurer seeks payment in the form of premiums, and the insured seeks the satisfaction of knowing that his property is protected should specifically covered losses occur.  Nevertheless, subsidiary parties may also claim an interest in insurance policy proceeds if certain conditions are fulfilled.  *See, e.g.*, *Safeco Ins. Co. of Am. v. Howard*, No. 2:09-cv-166, 2010 WL 5058549, at *2 (N.D. Ind. Dec. 6, 2010) (noting that "[a] party's interest . . . need not arise from ownership").  Mortgagees are precisely the type of party contemplated by such holdings.  *See id*; *Fifth Third Bank v. Ind. Ins. Co.*, 771 N.E.2d 1218, 1223 (Ind. Ct. App. 2002).

Before we determine what interest, if any, Ocwen may have in the insurance policy proceeds at issue here, we must decide whether the American Family Policy is a valid contract.  We address this issue preliminarily because Indiana law sets out three *prima facie* elements for a breach of contract claim, the threshold one being the existence of a contract.  *Niezer v. Todd Realty, Inc.*, 913 N.E.2d 211, 215 (Ind. Ct. App. 2009).  Deeming a contract void defeats the entire claim for the reason that "[a] void contract is 'of no legal effect, so that there is really no contract in existence at all'" to be breached.

*Marathon Oil Co. v. Collins*, 744 N.E.2d 474, 478 n.3 (Ind. Ct. App. 2001) (quoting

BLACK'S LAW DICTIONARY 326 (7th ed. 1999)).  Similarly, a voidable contract is one that

may be rescinded[8] at the option of one of the contracting parties; if the party exercises this

option, it is as if the contract never existed and, accordingly, cannot be breached.  *See*

*Colonial Penn Ins. Co. v. Guzorek*, 690 N.E.2d 664, 674 n.4 (Ind. 1997).  An insurer

entitled to rescind a policy has two options:  (1) void the policy in its entirety and return

the contracting parties to the status quo *ex ante*, or (2) affirm the policy and seek damages

from the insured.  *See Allianz Ins. Co. v. Guidant Corp.*, 884 N.E.2d 405, 414 (Ind. Ct.

App. 2008).  Longstanding principles of case law instruct us that Indiana's general rule is

that a contract must be rescinded in whole, not in part.  *Prudential Ins. Co. of Am. v.*

*Smith*, 108 N.E.2d 61, 65 n.5 (Ind. 1952); *see also Allianz Ins. Co.*, 884 N.E.2d at 415

(party that voids a contract "may not choose certain provisions to affirm and certain

provisions to reject"); *Barrington Mgmt. Co. v. Draper Family Ltd. P'ship*, 695 N.E.2d

135, 142 (Ind. Ct. App. 1998) (party "must affirm or avoid the contract in whole and

cannot treat it as good in part and void in part").

Here, American Family contends that there can be no breach of contract because

there is no contract in existence for the Court to recognize.  Specifically, American

Family asserts that the Allens' material misrepresentations in their application for

insurance suffice to void the American Family Policy *ab initio*.  Representations are

_____

[8]"To rescind means to void the contract from its inception," *i.e.*, *ab initio*.  *Am.*
*Underwriters Grp., Inc. v. Williamson*, 496 N.E.2d 807, 808 n.1 (Ind. Ct. App. 1986).

considered material "if the fact[s] omitted or misstated, if truly stated, might reasonably have influenced the insurer in deciding whether to reject or accept the risk or charge a higher premium." *French v. State Farm Fire & Cas. Co.*, 950 N.E.2d 303, 312 (Ind. Ct. App. 2011). The misrepresentations must also have deceived the insurer, which must in turn demonstrate having acted in reliance upon them. *State Farm Mut. Auto Ins. Co. v. Price*, 396 N.E.2d 134, 136 (Ind. Ct. App. 1976). Our review of the record leads us to conclude that, with respect to the Allens, American Family has presented adequate evidence to satisfy the standards for material misrepresentations. American Family's underwriter has provided the following key testimonial statements confirming our belief:

> [The Allens did not] advise[] American Family Mutual Insurance Company of any other insurance claims at the time of the application, including specifically the fire losses to the Talley and/or Turner properties. . . . The fact that the Allens had suffered numerous fires to real property would have resulted in a rejection of the application for any coverage with [American Family], and the policy of insurance would never have been written or issued pursuant to the underwriting guidelines.

Pl.'s Br. Ex. 9 at 3. The Allens' answer of "no" to the question of whether they had ever had "any past/current losses at any location" plainly constitutes a misstated fact which, if truly stated, would have influenced American Family to reject the risk. Further, Indiana law supports American Family's decision to rely on the Allens' factual representations and imposes "no duty to look beneath the surface" of these statements. *Foster v. Auto-Owners Ins. Co.*, 703 N.E.2d 657, 660 (Ind. 1998) (citing *Guzorek*, 690 N.E.2d at 674). American Family's decision to issue an insurance policy to the Allens corroborates its reliance on the Allens' misstatements of fact and demonstrates deception on the Allens'

part.  Accordingly, the Allens' answers regarding prior property losses embody material misrepresentations of fact.

In Indiana, "a material misrepresentation . . . in an insurance application, relied on by the insurer in issuing the policy, renders the coverage voidable at the insurance company's option." *Brennan v. Hall*, N.E.2d 383, 387 (Ind. Ct. App. 2009) (citing *Foster*, 703 N.E.2d at 659).  Any applicant for insurance who signs an application containing material misrepresentations is chargeable with knowledge of their falsity and is deemed to have adopted the statements as his own.  *Id.*  This asymmetry of information exchanged causes a failure of the "meeting of the minds" that is required in contract formation—namely, the risk to be insured.  Failure to achieve such consensus negates mutuality and undermines the contract's validity.  *See Guzorek*, 690 N.E.2d at 672; *Fox Dev., Inc. v. England*, 837 N.E.2d 161 165 (Ind. Ct. App. 2005); *Wallem v. CLS Indus., Inc.*, 725 N.E.2d 880, 883 n.1 (Ind. Ct. App. 2000).  As the American Family Policy declares on the first page, "[T]his policy is conditioned upon the truth of your statements."  Am. Fam.'s Br. Ex. J at 1.  Thus, although American Family properly expected to receive an accurate accounting of the Allens' insurance claims and fire history, the Allens' fabricated version of events prevented both parties from manifesting true assent.  A lie regarding property loss— material as to both the underwriting guidelines and the actual November 12, 2005 fire loss—therefore permitted American Family to void the insurance policy with respect to the Allens.

Nevertheless, it is also our view that under established precedent, severing

contractual ties between American Family and the Allens need not affect Ocwen's interests identically. Although Indiana case law on this point does not abound, the Indiana Court of Appeals has ruled that insurers "may not rescind a policy on the ground of . . . misrepresentation of the insured so as to escape liability to third parties." *Coy v. Nat'l Ins. Ass'n*, 713 N.E.2d 355, 362 (Ind. Ct. App. 1999) (citing *Am. Underwriters Grp., Inc. v. Williamson*, 496 N.E.2d 807, 810-11 (Ind. Ct. App. 1986)). The Seventh Circuit has also acknowledged that "public policy may be an appropriate rationale in limited circumstances to enforce a voidable contract." *N. Assurance Co. of Am. v. Summers*, 17 F.3d 956, 963 (7th Cir. 1994) (recognizing *Am. Underwriters Grp.* rationale but declining to extend to a distinguishable set of facts). We believe the situation before us—*i.e.*, where "the mortgagee's interest is in the [insureds'] indebtedness, not in the property," *Fifth Third Bank*, 771 N.E.2d at 1223—is one warranting enforcement of the contract so as to protect the innocent third party. Furthermore, we note the Indiana Supreme Court's express holding that a mortgagee's right to foreclose "in no way repudiates its right to demand payment from the insurance. Both the property pledged and the insurance constitute [the mortgagee's] security for the debt, and it [may] proceed against either or both." *Loving v. Ponderosa Sys., Inc.*, 479 N.E.2d 531, 537 (Ind. 1985).

Perhaps even more relevant to this lawsuit is the role a "standard" or "union" mortgage clause[9] plays in contract formation. Ocwen avers that the effect of such a

---

[9]"A policy that simply provides that it shall be payable to the mortgagee as his interest
(continued...)

clause is to create a separate contract between American Family and Ocwen, one which operates in complete isolation from the now-void agreement between American Family and the Allens. American Family, as before, maintains that once it exercised its option to void the insurance policy, the rescission effectively nullified any contractual rights Ocwen might have asserted. Stated otherwise, American Family understands Indiana's mandate to "affirm or avoid the contract in whole" to mean that the Court must treat the American Family Policy as one single contract which is now void as to the Allens, American Family, and Ocwen. After careful review of the relevant contract law principles, we must disagree.

Our research reveals no Indiana Supreme Court case law directly addressing the parties' dispute as to whether listing a mortgagee on an insurance policy creates a separate contract between the mortgagee and insurer. Thus, we look to *Property Owners Insurance Cos. v. Hack*, 559 N.E.2d 396 (Ind. Ct. App. 1990), for guidance. The Indiana Court of Appeals adopted the stance Ocwen now takes on the matter, stating as follows:

> [A mortgagee]'s name may appear on the policy under one or more of several designations. As a loss payee [named in a simple "open" mortgage clause], the [mortgagee] has no contract with the insurer, its rights are derivative of the named insured's rights, and it is subject to the same defenses as is the named insured. Accordingly, if the named insured commits arson, thereby excluding himself from

---

⁹(...continued)
may appear is called an 'open mortgage clause.' . . . This clause is to be distinguished from the 'union mortgage clause.' In the latter clause it is stipulated, in substance, that in case of loss the policy is payable to the mortgagee and that his interest as payee shall not be invalidated or affected by any act or omission of the mortgagor." *Fed. Nat'l Mortg. Ass'n v. Great Am. Ins. Co.*, 300 N.E.2d 117, 120 (Ind. Ct. App. 1973) (quoting *Prudential Ins. Co. v. German Mut. Fire Ins. Ass'n*, 60 S.W.2d 1008, 1009 (Mo. Ct. App. 1933)).

> coverage, any loss payees are also denied coverage.  Conversely, if the mortgagee is listed under a . . . standard, or union, mortgage clause, it is universally held that the mortgagee has entered into a separate contract with the insurer and is entitled to payment regardless of the mortgagor's acts or omissions.

*Id.* at 400.  A decade later, in *Fifth Third Bank*, the Indiana Court of Appeals relied on *Hack* in reaffirming this ruling that a standard mortgage clause creates a discrete contract between the insurer and any listed mortgagee "as its interest appears."[10]  *Fifth Third Bank*, 771 N.E.2d at 1223.

With such a sparse foundation in Indiana case law, it borders on foolhardy to conclude that the *Hack* and *Fifth Third Bank* opinions describe a view that is "universally held" in Indiana.  Because the Seventh Circuit has not yet opined on whether a standard mortgage clause gives rise to a separate contract, we look to the other circuit courts for guidance.  The First, Second, Third, Fourth, Fifth, Six, Eighth, and Ninth Circuits have all determined (when interpreting state law) that such clauses do create insurer-mortgagee contracts divaricated from the original insurer-insured contract.  *See In re Tower Air, Inc.*, 397 F.3d 191, 204 (3d Cir. 2005); *Cont'l Ins. Co. v. Bahnan*, 216 F.3d 150, 155 (1st Cir. 2000) ("Under [a standard mortgage clause], the insurer's obligation to the mortgagee is independent . . . here, the insurer has a defense as to the insured/mortgagor, but none as to the mortgagee."); *J.C. Wyckoff & Assocs. v. Std. Fire Ins. Co.*, 936 F.2d 1474, 1493 (6th Cir. 1991) (same); *U.S. v. Commercial Union Ins. Cos.*, 821 F.2d 164, 166 (2d Cir. 1987)

---

[10]The phrase "as its interests appears" refers to the amount of the debt owed to the mortgagee.  *Fifth Third Bank*, 771 N.E.2d at 1223-24.

("A standard mortgage clause . . . protect[s] the interests of a mortgagee from any acts or omissions . . . by the insured"); *Ingersoll-Rand Fin. Corp. v. Emp'rs. Ins. of Wausau*, 771 F.2d 910, 913 (5th Cir. 1985) ("[T]he modern decisions are unanimous . . . in holding that a mortgagee under a standard mortgage clause may . . . recover from the insurer for a loss sustained by the mortgaged property, even though the risk be excluded from the policy coverage, where any act of the mortgagor has caused or contributed to the loss as resulting from an excluded risk; and even though as between the mortgagor-insured and the insurer there is no coverage because of some default by the mortgagor."); *J.B. Kramer Grocery Co. v. Glens Falls Ins. Co.*, 497 F.2d 709, 712 (8th Cir. 1974) ("[The mortgagee's] right to recovery is unaffected by the acts of the insured."); *Tarleton v. De Veuve*, 113 F.2d 290, 297 (9th Cir. 1940) ("With but few exceptions, the courts are in agreement that where the interest of a mortgagee is protected by a standard . . . mortgage clause, there exists an independent contract between the mortgagee and the insurer, and the mortgagee's rights under the mortgage clause cannot be invalidated by any act or neglect of the mortgagor or owner."); *N.Y. Underwriters Ins. Co. v. Cent. Union Bank of S.C.*, 65 F.2d 738, 739 (4th Cir. 1933) ("The mortgage clause protects the mortgagee against any act or neglect of the mortgagor, whether prior or subsequent to its execution."); *see also Seventh Ave. Boutique, Inc. v. Aetna Ins. Co.*, 573 F. Supp. 1027, 1028 (N.D. Ill. 1983) (same); *In re Mount Calvary Baptist Church*, 162 B.R. 181, 190 (Bankr. N.D. Ill. 1993) (same). Even as we acknowledge that the foregoing decisions do not bind us precedentially, we are sufficiently persuaded by these circuits' broad

consensus, which we adopt and shall apply here in resolving the issues before us. We therefore conclude that the Allens' designation of Ocwen as first mortgagee on the American Family Policy effectively created two separate contractual relationships which American Family was obligated to honor: one with the Allens, and another with Ocwen. As a result, Ocwen's contract with American Family survives the dissolution of the Allens' former insurance policy.

Because Ocwen and American Family entered into a valid and enforceable contract separate from the one by and between the Allens and American Family, their agreement must be construed using the familiar tenets of contract interpretation. One of the most basic precepts of contract construction is that where contract language is clear and unambiguous, it should be given its plain meaning. *Eli Lilly Co. v. Home Ins. Co.*, 482 N.E.2d 467, 470 (Ind. 1985); *Newnam Mfg., Inc. v. Transcont'l. Ins. Co.*, 871 N.E.2d 396, 401 (Ind. Ct. App. 2007). Courts must therefore give all contract language effect and "construe the insurance policy as a whole, rather than considering individual words, phrases, or paragraphs." *Westfield Cos.*, 804 N.E.2d at 1274; *see also W. S. Life Ins. Co. v. Acton*, 779 N.E.2d 941, 943 (Ind. Ct. App. 2002) (holding that courts should "interpret the language of a contract so as not to render any words, phrases, or terms ineffective or meaningless"). Any ambiguities in the contract must be construed strictly against the insurer. *Beam v. Wausau Ins. Co.*, 765 N.E.2d 524, 528 (Ind. 2002).

As indicated above, the mortgage clause set out in the American Family Policy

provides as follows: "If a mortgagee is named in this policy, any loss payable on buildings will be paid to the mortgagee and you[, the Allens], as interests appear." This provision also advises the insured that denial of his claim will not affect a valid claim of the mortgagee, provided that the mortgagee fulfills certain enumerated conditions. Reading the contract in light of all the circumstances, we conclude that the November 12, 2005 Talley Avenue residence fire loss activated American Family's duty to tender "any loss payable" on this covered dwelling to Ocwen and the Allens, "as interests appear." We have already established that the Allens' misrepresentations effectively terminated their interest in the loss proceeds; hence, American Family's lone obligation was to Ocwen. Moreover, Ocwen had no corresponding duty to comply with other listed conditions because American Family did not deny the Allens' claim. We reject Ocwen's contention that American Family's November 29, 2005 letter to the Allens constituted a denial of the Allens' claim and characterize the communication as one voiding the American Family Policy *ab initio* only with respect to the Allens. Similarly, we do not interpret numbers 12, 13, and 20 of American Family's affirmative defenses[11] to convey a denial of coverage to the Allens. As discussed above, the Allens' contract with American Family was wholly separate from Ocwen's contract with American Family. Therefore, when American Family failed to tender loss proceeds under Ocwen's separate insurance

---

[11]Affirmative defense number 12 states that the policy's terms and conditions exclude Ocwen's claim. Number 13 states that Ocwen's claim is barred by the Allens' misrepresentations, and Number 20 states that "the [d]efendant's policy of insurance was void." Am. Fam.'s Answer at 12-13.

policy entitlements, American Family breached its contract with Ocwen and caused

Ocwen to suffer damages in the amount of the Allens' indebtedness.

As a final matter regarding this breach of contract claim, we address American

Family's argument that Ocwen's lawsuit is time-barred. American Family refers the

Court to Section I, paragraph 18 of the "Conditions" section of the American Family

Policy ("Suit Against Us"), which provides, in pertinent part, that "[s]uit must be brought

within one year after the loss or damage occurs." Am. Fam.'s Br. at 22 (citing Am.

Fam.'s Br. Ex. J at 9). Declaring—correctly, of course—that Ocwen's November 9, 2007

filing date well exceeds one year past the November 12, 2005 fire loss, American Family

notes that courts often honor such time limitations to prevent unreasonable delay. *Id.* at

23-24 (citing *Summers v. Auto-Owners Ins. Co.*, 719 N.E.2d 412, 414 (Ind. Ct. App.

1999)). We remind American Family that, in the context of insurance policies,

contractual limitations periods are not favored because of "Indiana's strong preference

that cases be decided on their merits." *Auto-Owners Ins. Co. v. Hughes*, 943 N.E.2d 432,

436 (Ind. Ct. App. 2011); *Summers*, 719 N.E.2d at 414. We also note *Summers*'s holding

that "contractual limitation periods may be waived by an insurer if its conduct is

sufficient to create a reasonable belief . . . that strict compliance with the policy provision

will not be required." *Id.* at 415. Here, because the evidence of record suggests that both

Ocwen and American Family may have been unclear as to where they stood in terms of

the contract as early as November 2005, we conclude that it is reasonable to excuse

Ocwen's delayed filing. Accordingly, American Family is estopped from enforcing the limitations period in the instant matter. To echo the Indiana Court of Appeals, "[t]o hold otherwise . . . would be to allow the insurer to lull [Ocwen] into not pressing [its] rights and then deny liability on the basis of the limitation period." *Wingenroth v. Am. States Ins. Co.*, 455 N.E.2d 968, 970 (Ind. Ct. App. 1983).

With these points in mind, we conclude that there is no genuine issue of material fact regarding the question of whether American Family breached its contract with Ocwen, and Ocwen is entitled to judgment as a matter of law on the issue. Therefore, Ocwen's Motion for Summary Judgment on its breach of contract claim against American Family is GRANTED, and American Family's Motion for Summary Judgment on the same claim is DENIED. American Family is liable to Ocwen for the principal amount of mortgage debt on the Talley Avenue residence as of November 12, 2005, plus accrued interest and fees incurred up to the date of judgment.[12]

### B. Quasi-Contract

Count Five of Ocwen's Complaint sounds in quasi-contract. Ocwen contends that it relied on the Allens' representations that American Family would insure the Talley Avenue residence and, as a result, neither required the Allens to obtain secondary

---

[12]Ocwen is not entitled to consequential damages. *See Burleson v. Ill. Farmers Ins. Co.*, 725 F. Supp. 1489, 1499 (S.D. Ind. 1989) (concluding that "consequential damages are not recoverable in Indiana from an insurer in a direct action on a policy where there is no showing of bad faith on the insurer's behalf").

insurance nor took out its own hazard insurance policy to protect its interest in the

mortgage debt. Further, Ocwen asserts that: (1) it relied on the American Family Policy

to its detriment; (2) American Family received a benefit by collecting premiums from the

Allens; and (3) American Family's post-loss return of premiums to the Allens does not

remedy Ocwen's loss. Compl. ¶¶ 59-61.

A quasi-contract, or a contract "implied in law," is not a contract in the true sense

of the term. Rather, this concept "rest[s] on a legal fiction imposed by law without regard

to the assent of the parties." *Higginbotham ex rel. Davis v. Keithley*, 103 F. Supp. 2d

1075, 1083 (S.D. Ind. 1999) (citing *Galloway v. Methodist Hosps., Inc.*, 658 N.E.2d 611,

614-15 (Ind. Ct. App. 1995)). A party bringing a quasi-contract claim must allege that its

opponent "expressly or impliedly requested a benefit or accepted a benefit which it had

the opportunity to decline." *Forsythe Racing, Inc. v. Player's Co.*, No. 1:04-cv-2102-

SEB-VSS, 2005 WL 2218365, at *5 (S.D. Ind. Sept. 8, 2005) (citing *Garage Doors of

Indianapolis, Inc. v. Morton*, 682 N.E.2d 1296, 1303 (Ind. Ct. App. 1997)). Preventing

unjust enrichment is the doctrine's primary purpose. *Keithley*, 103 F. Supp. 2d at 1083

(citing *Wright v. Pennamped*, 657 N.E.2d 1223, 1229-30 (Ind. Ct. App. 1995)).

Finding no arguments in the briefing addressing quasi-contract from either Ocwen

or American Family save American Family's general assertion that all of Ocwen's claims

are barred, we decline to delve into the nuances of this equitable remedy. Where, as here,

we have determined that a contract actually existed and was breached, there is no basis

for further recovery. *Cf. Zoeller v. E. Chi. Second Century, Inc.*, 904 N.E.2d 213, 220

(Ind. 2009) (discussing appropriateness of quasi-contract where "under the law of natural and immutable justice there *should* be a recovery") (emphasis added). We therefore conclude that, given the absence of any unjust enrichment, Ocwen is not entitled to the imposition of a quasi-contract as a matter of law, and we GRANT American Family's Motion for Summary Judgment on this issue.

### C. Bad Faith

Next, we address whether American Family has presented adequate facts to establish that it is entitled to judgment as a matter of law on Ocwen's bad faith claim against it. American Family argues that where there is a legitimate conflict in the evidence or the interpretation of the law, a good faith basis to dispute liability and/or refuse to pay an insurance claim exists. It further alleges that Indiana case law permits insurers to deny liability without incurring the risk of punitive damages and that public policy does not support requiring insurers to choose between paying or litigating. Am. Fam.'s Br. at 30. In response, Ocwen contends that American Family's refusal to pay policy proceeds was unfounded because of American Family's: (1) election to void the Allens' policy; (2) attempt to assert a contractual time limitation against Ocwen; and (3) reliance on a coverage position which, according to Ocwen, "has absolutely no basis in Indiana law." Pl.'s Br. at 14.

Indiana law imposes a duty on all insurance companies to deal with policyholders[13]

_____

[13]We impute this duty to American Family's dealings with Ocwen in this situation

(continued...)

(Ind. 2009) (discussing appropriateness of quasi-contract where "under the law of natural and immutable justice there *should* be a recovery") (emphasis added). We therefore conclude that, given the absence of any unjust enrichment, Ocwen is not entitled to the imposition of a quasi-contract as a matter of law, and we GRANT American Family's Motion for Summary Judgment on this issue.

### C. Bad Faith

Next, we address whether American Family has presented adequate facts to establish that it is entitled to judgment as a matter of law on Ocwen's bad faith claim against it. American Family argues that where there is a legitimate conflict in the evidence or the interpretation of the law, a good faith basis to dispute liability and/or refuse to pay an insurance claim exists. It further alleges that Indiana case law permits insurers to deny liability without incurring the risk of punitive damages and that public policy does not support requiring insurers to choose between paying or litigating. Am. Fam.'s Br. at 30. In response, Ocwen contends that American Family's refusal to pay policy proceeds was unfounded because of American Family's: (1) election to void the Allens' policy; (2) attempt to assert a contractual time limitation against Ocwen; and (3) reliance on a coverage position which, according to Ocwen, "has absolutely no basis in Indiana law." Pl.'s Br. at 14.

Indiana law imposes a duty on all insurance companies to deal with policyholders[13]

_____

[13]We impute this duty to American Family's dealings with Ocwen in this situation

(continued...)

in good faith, and breach of this duty provides a cause of action sounding in tort.  *USA*

*Life One Ins. Co. of Ind. v. Nuckolls*, 682 N.E.2d 534, 541 (Ind. 1997).  "In the context of

the denial of insurance claims, a finding of bad faith requires evidence of a state of mind

reflecting a dishonest purpose, moral obliquity, furtive design, or ill will."  *Ag One Co-op*

*v. Scott*, 914 N.E.2d 860, 864 (Ind. Ct. App. 2009).  Thus, neither poor judgment nor

negligence will suffice to state a claim for dealing with an insured in bad faith; "the

additional element of conscious wrongdoing must be present."  *Id.* (quoting *Spencer v.*

*Bridgewater*, 757 N.E.2d 208, 212 (Ind. Ct. App. 2001)).  Punitive damages, although

available if bad faith can be demonstrated, will not be imposed when a party "seeks to

litigate an honest dispute," regardless of whether that party's theory of recovery is

ultimately correct.  *Willsey v. Peoples Fed. Sav. & Loan Ass'n of E. Chi.*, 529 N.E.2d

1199, 1208 n.7 (Ind. Ct. App. 1988) (citing *Vernon Fire & Cas. Ins. Co. v. Sharp*, 349

N.E.2d 173, 181 (Ind. 1976)).

Indiana specifically defines "[t]he obligation of good faith and fair dealing with

respect to the discharge of the insurer's contractual obligation [to] include[] the obligation

to refrain from (1) making an unfounded refusal to pay policy proceeds; (2) causing an

unfounded delay in making payment; (3) deceiving the insured; and (4) exercising any

unfair advantage to pressure an insured into a settlement of his claim."  *Erie Ins. Co. v.*

---

[13](...continued)
because of "the unique character of the insurance contract which supports the conclusion that
there is a 'special relationship.'" *Cain v. Griffin*, 849 N.E.2d 507, 510 (Ind. 2006).

*Hickman*, 622 N.E.2d 515, 519 (Ind. 1993). Even so, "insurance companies may, in good faith, dispute claims." *Id.* at 520; *see also Eberle v. Prudential Ins. Co. of Am.*, No. 4:05-cv-0030, 2007 WL 541821, at *9-10 (N.D. Ind. Feb. 14, 2007). The parameters of the aptly dubbed "right to disagree" rule have been established over the years by case law. In *Vernon Fire*, the Indiana Supreme Court addressed the "right to disagree" rule thusly:

> It is evident that the exercise of this right may directly result in the intentional infliction of temporal damage . . . . The infliction of this damage has generally been regarded as privileged, and not compensable, for the simple reason that it is worth more to society than it costs, *i.e.*, the insurer is permitted to dispute its liability in good faith because of the prohibitive social costs of a rule which would make claims nondisputable. Insurance companies burdened with such liability would either close their doors or increase premium rates to the point where only the rich could afford insurance.

*Vernon Fire*, 349 N.E.2d at 181.

In *Hoosier Insurance Co. v. Mangino*, 419 N.E.2d 978 (Ind. Ct. App. 1981), the Indiana Court of Appeals interpreted *Vernon Fire* and its progeny as requiring a complete "[a]bsence of *any reasonable grounds* for denying liability" before a factfinder may infer malice or oppressive conduct from an insurer's failure to pay a claim. *Id.* at 983 (emphasis added) (citing *Vernon*, 349 N.E.2d at 181; *First Fed. Sav. & Loan Ass'n of Indianapolis v. Mudgett*, 397 N.E.2d 1002 (Ind. Ct. App. 1979); *Rex Ins. Co. v. Baldwin*, 323 N.E.2d 270 (Ind. Ct. App. 1975)). The court recognized that arson presents a unique situation wherein the insurer may be uncertain of what, if any, proceeds must be tendered. *See generally id.* at 987-90. Importantly, the court held that "an insurance company is not required to either pay or litigate at its peril." *Id.* at 988. By contrast, in *Riverside*

*Insurance Co. v. Pedigo*, 430 N.E.2d 796 (Ind. Ct. App. 1982), the court stressed that flagrant conduct—namely, an insurer's concealment of an arson investigation and failure to tell insureds that the insurer was denying a claim—"clearly [lies] outside the 'right to disagree' rule." *Id.* at 808.

The instant litigation falls straightforwardly within the boundaries of the "right to disagree" rule as articulated by the Indiana courts. In light of the Allens' misrepresentations, the subsequent criminal prosecution and conviction of Mr. Allen, and the heretofore unclear status of Indiana law regarding mortgagees' rights under homeowners' insurance policies, we cannot conclude that American Family's dealings with Ocwen amounted to bad faith. Rather, we believe the evidence demonstrates a conflict in the parties' interpretation of the law, which certainly provides a reasonable basis to question liability. We therefore find that there is no genuine issue of material fact as to American Family's good faith in handling its dispute with Ocwen. American Family is entitled to judgment as a matter of law, and its Motion for Summary Judgment on Ocwen's bad faith claim is GRANTED. Accordingly, Ocwen's Motion for Summary Judgment on its bad faith claim against American Family is DENIED.

## III. Ocwen's Motion as to Nationwide's Alleged Breach of Contract

In Count One of its Complaint, Ocwen alleges that its right to receive insurance proceeds under the Nationwide Policy is not adversely affected by the insurer's denial of coverage to the insureds. Ocwen makes the very general assertion that, pursuant to the mortgage clause, it must "compl[y] with the listed requirements" to preserve this right.

Compl. ¶ 20.  Claiming to have adhered to "all applicable portions of the [m]ortgage [c]lause," Ocwen argues that Nationwide's subsequent refusal to tender policy proceeds to Ocwen is a breach of contract.  Ocwen further states that Nationwide's denial of the Allens' claim does not terminate the obligation to honor Ocwen's valid claim.  *Id.* ¶ 23. Nationwide rejoins that because Ocwen is bound by four additional policy provisions, nonpayment on Nationwide's part cannot be deemed a breach of contract unless Ocwen demonstrates compliance with the mortgage clause *and* the other four provisions, to wit: paragraphs 3, 5, 6, and 8 of the Nationwide Policy.  According to Nationwide, Ocwen's failure to comply with paragraph 5(c) vitiates any duty Nationwide may have had under the mortgage clause to pay insurance proceeds to Ocwen.

Again, as with Ocwen's breach of contract claim against American Family, we first address whether there is a legally enforceable contract between Ocwen and Nationwide.  This claim presents a slightly different situation because Nationwide did not void the policy it issued to the Allens, but the result is nonetheless identical:  because Ocwen is listed as mortgagee in the Nationwide Policy, we hold that a separate contract between Ocwen and Nationwide exists.  Thus, once more, we rely on routine canons of contract interpretation to determine whether Ocwen is entitled to judgment as a matter of law on its breach of contract claim against Nationwide.

Paragraph 5(c) of Section I ("Loss Payment"), upon which Nationwide relies in support of its argument, provides:

We will pay you unless some other person is named in this policy to receive

28

payment.  Payment will be made within 60 days after we receive your proof of loss and:
(1) reach agreement with you; or
(2) there is an entry of a final judgment; or
(3) there is a filing of an appraisal award with us.

Compl. Ex. 2 at E2.  The mortgage clause expressly states that policy conditions relating to this paragraph apply to a mortgagee.  *Id.* at E3.  Nationwide alleges that because Paragraph 5(c)'s conditions for payment have not been satisfied, it bears no obligation to pay policy proceeds to Ocwen.

Examining this provision in light of both the entire policy and the evidence in the record, we first observe that the Allens filed their proof of loss on November 21, 2005. Ocwen subsequently filed Claim 9113HP164976111205 with Nationwide in order to protect its interests and, presumably, to satisfy Paragraph 5(c) of its independent agreement with Nationwide.  Compl. ¶¶ 13, 15.  Thus, to trigger Nationwide's duty to pay Ocwen, fulfillment of one of Paragraph 5(c)'s three conditions was compulsory.  Viewing the facts in the light most favorable to Nationwide, the non-movant, as we are required to do at this summary judgment stage, we conclude that Paragraph 5(c) has not been satisfied.

Condition (1) of the "Loss Payment" clause essentially became a non-issue because Nationwide denied the Allens' claim on June 12, 2006.  In our view, no reasonable juror could conclude that Nationwide's posture constitutes "reaching agreement" with its insured.  The same is true as between Nationwide and Ocwen; neither party disputes that Nationwide has not officially denied Ocwen's claim or that the amount

of the Allens' debt[14] remains in controversy. Accordingly, we find that the first condition has not been satisfied. We can also dispense expeditiously with Condition (2) by noting that there has been no entry of a final judgment. The parties' debate regarding the June 2010 state court's denial of Ocwen's Motion for Summary Judgment is nothing more than a red herring, as Indiana courts have routinely held that "the denial of a motion for summary judgment is not a final judgment from which an appeal may be taken, because no rights have been thereby foreclosed." *Loving*, 479 N.E.2d at 534; *see also Bd. of Trs. of Ball State Univ. v. Strain*, 771 N.E.2d 78, 81 (Ind. Ct. App. 2002) (noting that an order denying summary judgment "does not irretrievably dispose of one or more issues between the parties"); *Keith v. Mendus*, 661 N.E.2d 26, 35 (Ind. Ct. App. 1996) (same). Finally, finding no evidence of an appraisal award in the submissions to the Court, we must conclude that none of Paragraph 5(c)'s prerequisites were met.

Because of Ocwen's rebuttal to Nationwide based on a contention of ambiguity, it of course bears repeating that Indiana's general rule is to construe any ambiguous language in an insurance contract against the insurer. This rule evolved because insurance policies—which are drafted solely by the insurer—can be viewed as contracts of adhesion. *See Beam*, 765 N.E.2d at 528; *Hayes v. Allstate Ins. Co.*, 722 F.2d 1332, 1335 (7th Cir. 1983) (citing *Freeman v. Commonwealth Life Ins. Co.*, 271 N.E.2d 177, 181 (Ind. Ct. App. 1971)). An ambiguity exists when reasonable persons, upon reading

---

[14]As explained above, this amount represents Ocwen's interest in the loss proceeds.

the contract, would find its terms susceptible to more than one interpretation. *Adult Grp. Props., Ltd. v. Imler*, 505 N.E.2d 459, 466 (Ind. Ct. App. 1987). Nevertheless, "for purposes of summary judgment," ambiguous terms are to be construed in favor of the insured "only if the ambiguity exists by reason of the language used and not because of . . . facts." *Cinergy Corp. v. Assoc. Elec. & Gas Ins. Servs.*, 865 N.E.2d 571, 574 (Ind. 2007); *see also McCae Mgmt. Corp. v. Merchants Nat'l Bank & Trust Co. of Indianapolis*, 553 N.E.2d 884, 887 (Ind. Ct. App.1990). As a result, we emphasize that there is no genuine issue of material *fact* that Ocwen is not entitled to recover from Nationwide in an action for breach of contract. Therefore, Ocwen's Motion for Summary Judgment against Nationwide is DENIED.

## Conclusion

Based on the foregoing analysis in this entry, the Court now rules as follows on the Cross-Motions for Summary Judgment:

(1) Ocwen's Motion for Summary Judgment with respect to its breach of contract claim against American Family is GRANTED, and American Family's Motion for Summary Judgment on the same claim is DENIED;

(2) American Family is liable to Ocwen for the mortgage amount due on the Talley Avenue residence as of November 12, 2005, plus accrued interest and fees incurred up to the date of judgment;

(3) American Family's Motion for Summary Judgment on Ocwen's quasi-contract claim against American Family is GRANTED;

(4) American Family's Motion for Summary Judgment on Ocwen's bad faith claim against American Family is GRANTED, and Ocwen's Motion for Summary Judgment on the same claim is DENIED; and

(5) Ocwen's Motion for Summary Judgment on its breach of contract claim against Nationwide is DENIED.

IT IS SO ORDERED.

Date: _____03/29/2012_____

_Sarah Evans Barker_

SARAH EVANS BARKER, JUDGE
United States District Court
Southern District of Indiana

Copies to:

Michael R. Bain
HUME SMITH GEDDES GREEN & SIMMONS
mbain@humesmith.com

Beth A Barnes
HUME SMITH GEDDES GREEN & SIMMONS
bbarnes@humesmith.com

Lucy Renee Dollens
FROST BROWN TODD LLC
ldollens@fbtlaw.com

Samuel Dustin Ellingwood
HUME SMITH GEDDES GREEN & SIMMONS
sellingwood@humesmith.com

Melanie D. Margolin
FROST BROWN TODD LLC
mmargolin@fbtlaw.com

Chantelle Renee Neumann
POTESTIVO & ASSOCIATES, P.C.
cneumann@potestivolaw.com

Robert Scott O'Dell
O'DELL & ASSOCIATES, P.C.
rodell@odell-lawfirm.com

Michael A. Rogers

FROST BROWN TODD LLC

mrogers@fbtlaw.com

Seth Robert Wilson

HUME SMITH GEDDES GREEN & SIMMONS LLP

swilson@humesmith.com